FIRST DIVISION
February 25, 2008

No. 1-07-0294

| | | |
|---|---|---|
| JACQUELINE WILKERSON, Successor Special | ) | Appeal from the |
| Administrator of the Estate of Beverly | ) | Circuit Court of |
| Newsome, Deceased, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 03 L 7107 |
| | ) | |
| THE COUNTY OF COOK, d/b/a Cook County | ) | |
| Hospital; JAYA AHUJA, and | ) | |
| HENRY CHING, | ) | The Honorable |
| | ) | Marcia Maras, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

In this medical malpractice case, the plaintiff, Jacqueline Wilkerson, successor special administrator of the estate of Beverly Newsome, deceased, appeals from an order granting summary judgment in favor of the defendants, County of Cook, d/b/a Cook County Hospital, Jaya Ahuja, M.D., and Henry Ching. On appeal, the plaintiff contends that summary judgment was improper because (1) a question of fact exists as to whether the defendants were negligent in their treatment of the decedent and (2) Dr. Ahuja's contradictory testimony created a credibility issue, appropriately resolved only by the trier of fact. We affirm.

BACKGROUND

The controversy before us concerns whether Cook County

Hospital and its employees, Henry Ching, a cytotechnician, and Dr. Jaya Ahuja, a pathologist, were negligent in the treatment of Ms. Newsome following an abnormal Pap smear that revealed the presence of "Inflammatory and degenerative changes. Reactive changes. Anucleated squames" by failing to conduct a follow-up Pap smear and, potentially, a cervical biopsy. According to the plaintiff, the failure to conduct such a follow-up, constituted negligent treatment from which liability may occur under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/6-106(d) (West 2004)).

On November 18, 1996, Ms. Newsome went to Cook County Hospital complaining of lower abdominal pain and vaginal discharge. The results of a Pap smear taken during her initial examination yielded the following: "Inflammatory and degenerative changes. Reactive changes. Anucleated squames." Dr. Ahuja and Ching reviewed the Pap smear and made nonspecific findings. Ms. Newsome's diagnosis was pregnancy and a vaginal infection, bacterial vaginosis. Dr. Ahuja did not diagnose cancer or a precancerous condition. Ching, as a technician, did not make a diagnosis.

Ms. Newsome was treated for the vaginal infection. Ms. Newsome underwent additional prenatal visits at Cook County Hospital, but ultimately delivered her child at West Suburban Medical Center in April 1997. She was later diagnosed by West Suburban Medical Center staff with cervical cancer. Ms. Newsome

sought treatment for cervical cancer until her death on June 24, 1997.

On May 16, 2005, the plaintiff filed the present form of her complaint, the first amended complaint at law. In Counts I and II of her complaint, the plaintiff alleges that the defendants were negligent in one or more of the following respects.

"a. Failing to properly or adequately administer pap smears during Plaintiff's Decedent's treatment; or

b. Failing to properly or adequately interpret the laboratory tests done during Plaintiff's Decedent's treatment; or

c. Failing to properly or adequately follow-up or treat the abnormal pathology reports made during Plaintiff's Decedent's treatment; or

d. Failing to obtain adequate or proper consults with specialists."

The defendants filed a motion for summary judgment based on the Tort Immunity Act. 745 ILCS 10/1-101 et seq. (West 2004). In their motion, the defendants argued they were entitled to the protections of the Tort Immunity Act because they never diagnosed Ms. Newsome as having cancer or a precancerous condition and, thus, no follow-up testing or treatment was required. See 745 ILCS 10/6-105, 6-106(a) (West 2004). The only treatment Ms.

No. 1-07-0294

Newsome received from the defendants was for a vaginal infection and the plaintiff does not contend that the treatment of the infection was negligent.

In her reply, the plaintiff argued that the evidence established that Ms. Newsome was diagnosed with pregnancy and an abnormal Pap smear. She was then treated with prenatal visits and monitoring. The plaintiff argues that as part of the treatment plan, the defendants were required to conduct a repeat Pap smear or cervical biopsy and that their failure to do so proximately led to Ms. Newsome's death. The plaintiff contends that because the defendants' negligence related to their treatment of Ms. Newsome, not her diagnosis, they are not entitled to immunity under the Tort Immunity Act.

In reviewing the defendants' motion for summary judgment, the trial court considered the depositions of Henry Ching, Dr. Jaya Ahuja, and Dr. Ronald S. Leuchter.

During his deposition, Ching testified that he was the cytotechnologist who analyzed Ms. Newsome's Pap smear slides at Cook County Hospital in November 1996. Ching explained that his job as a cytotechnologist requires him to screen slides and then mark his impressions, whether normal or abnormal. He does not make any recommendation or opinion as to why a reading could have resulted in an abnormal impression as he is not trained to do so. Ching explained that the procedure at Cook County Hospital requires him to fill out a "requisition form" noting his

**4**

impressions after review of a Pap smear slide. If the slide results appear abnormal, he notes that on the back of the requisition form and sends his impressions, along with the slides, to the pathologist for a diagnosis.

Ching testified to the presence of several abnormalities on Ms. Newsome's Pap smear slides. Thus, consistent with procedure, he noted his impressions on the requisition form and forwarded it, with the slides, to Dr. Ahuja. In response to questions concerning results of Pap smears generally, Ching explained that the presence of anucleated cells must be reported by a cytotechnologist to a pathologist because, at times, these cells may hide malignant cells. He further explained that an "inflammatory degenerative" finding is generally considered a normal finding, and thus, not required to be brought to the attention of a pathologist, but a "reactive changes" finding needs to be brought to the attention of a pathologist. He explained that when he observes something unusual, whether benign or malignant, he always forwards the slides to the pathologist "for them to judge if it's malignant or not," as he is not trained to make that determination.

In her deposition, Dr. Jaya Ahuja testified that she was the surgical pathologist who reviewed Ms. Newsome's Pap smear slides after the cytotechnologist forwarded them to her with his impressions. She explained that the procedure of Cook County Hospital requires her to review all slides cytotechnologists read

as abnormal. Dr. Ahuja reviewed Ms. Newsome's Pap smear slides and reported "Inflammatory and degenerative changes. Reactive changes. Anucleated squames." Dr. Ahuja generated a summary report based on her findings that was made available to the patient's attending physician. Dr. Ahuja attributed the inflammation of the cervix to a bacterial infection. She explained that inflammation "is not consistent with malignancy." Dr. Ahuja further explained that "reactive changes" and "anucleated squames" can be seen when the cells are benign, "dysplastic" or malignant. She explained that dysplastic is a condition between benign and malignant. She firmly stated, "[t]here [were] no malignancies here."

Dr. Ahuja stated that after her review of Ms. Newsome's slides, her findings were all "nonspecific in nature," meaning they could be deemed "normal or abnormal," depending on the attending physician and what he or she decided to do next. Dr. Ahuja explained that a Pap smear is "the screening process" and that if malignant cells are present, a biopsy is performed for "confirmation." Dr. Ahuja admitted that the standard of care requires her to report to the attending physician the presence of malignant or cancerous cells on the patient's slide. However, in this situation, Dr. Ahuja felt there was no need to recommend that the attending physician conduct a follow-up because she had no suspicion of malignant cells after her review of Ms. Newsome's slides. Additionally, she explained that in her experience

**6**

"[these] kind of findings, 90 percent of the time are benign."

In his deposition, the plaintiff's expert, Dr. Ronald S. Leuchter, explained that his field of work is gynecologic oncology, meaning the practice of "GYN cancers." Dr. Leuchter admitted that in his practice, he reviews Pap smear slides, in conjunction with a cytopathologist, only three to six times a year.

In this case, Dr. Leuchter did not review Ms. Newsome's Pap smear slides but, instead, reviewed Ms. Newsome's hospital records from Cook County Hospital and West Suburban Medical Center, as well as the deposition testimony of Dr. Ahuja and Henry Ching. Dr. Leuchter opined that it was likely that the cervical cancer was present during Ms. Newsome's pregnancy and that it "should have been manifested by an abnormal Pap smear at her initial antenatal visit." Dr. Leuchter further explained that it was likely that the cervical cancer was present six months to a year before Ms. Newsome died in June 1997. Dr. Leuchter opined that because Ms. Newsome was diagnosed with aggressive cervical cancer within nine months of her first antenatal visit, he would have expected her Pap smear to yield a "significantly abnormal" result.

Dr. Leuchter testified that a nonspecific Pap smear result can be related to malignancy or not, but "in all these cases, it demands a Pap smear repeat *** [and] an inspection, palpation of the cervix." Dr. Leuchter admitted "[a] biopsy is used to

**7**

diagnose an invasive cancer, be it endophytic of exophytic." Later Dr. Leuchter explained that given the results of Ms. Newsome's Pap smear, he would have called for a repeat Pap smear to be done four weeks later. Dr. Leuchter testified he would consider that second Pap smear "part of her treatment -- diagnosis and treatment. It's all in one." He further explained that if the second Pap smear yielded an abnormal result, a biopsy would be done as "part of her care and treatment."

The trial court granted the defendants' motion for summary judgment on January 8, 2007, pursuant to the Tort Immunity Act. In response to the defendants' attorney's argument that "[a]gain, it goes back to you need the condition precedent, which is some diagnosis of the condition, which never occurred here," the court responded, "I agree, counsel. Motion for summary judgment is granted on all parties." The plaintiff appealed.

ANALYSIS

I

On appeal, the plaintiff maintains that a question of fact exists as to whether the defendants' treatment of Ms. Newsome, after her initial Pap smear came back abnormal, was negligent, and, therefore, summary judgment was improper.

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). The trial

**8**

court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. Purtill v. Hess, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). We review the circuit court's decision to grant summary judgment de novo. Arangold Corp. v. Zehnder, 204 Ill. 2d 142, 146, 787 N.E.2d 786 (2003). In doing so, we recognize that although summary judgment is encouraged as an aid to expedite the disposition of a lawsuit, it is nevertheless "a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt." Purtill, 111 Ill. 2d at 240.

On appeal, the plaintiff argues that summary judgment was improper because subsection (d) of section 6-106 limits the immunity from medical malpractice liability set forth by the Tort Immunity Act by providing that defendants are liable for injury proximately caused by their negligent acts or omissions in the administration of any treatment prescribed for physical illness. (Emphasis added.) 745 ILCS 10/6-106(d) (West 2004). The plaintiff contends that the allegations in her complaint and the evidence presented to support those allegations established the essence of her lawsuit involved the defendants' repeated failure to properly treat, not diagnose, Ms. Newsome's cervical cancer. The plaintiff argues that Ms. Newsome's initial Pap smear, which

**9**

yielded an abnormal result, was the diagnosis and that further treatment in the form of a second Pap smear was required. The plaintiff contends that the defendants' failure to conduct the additional Pap smear was negligent treatment.

The defendants reply that because Ms. Newsome was never diagnosed with cervical cancer at Cook County Hospital, summary judgment was proper under section 6-105 of the Tort Immunity Act, which immunizes a defendant for failing to make an adequate examination, and section 6-106(a), which immunizes a defendant for failing to diagnose an illness. 745 ILCS 10/6-105, 6-106(a) (West 2004).

In granting the defendants' motion for summary judgment, the trial court relied on Mabry v. County of Cook, 315 Ill. App. 3d 42, 733 N.E.2d 737 (2000), and Michigan Avenue National Bank v. County of Cook, 306 Ill. App. 3d 392, 714 N.E.2d 1010 (1999), aff'd, 191 Ill. 2d 493, 732 N.E.2d 528 (2000).

In Mabry, this court held that the defendants, a public hospital and its employees, were immune from medical malpractice liability under sections 6-105 and 6-106(a) of the Tort Immunity Act for their failure to diagnose the ailment (pulmonary embolism) which caused the decedent's death. Mabry, 315 Ill. App. 3d at 58-59. In Mabry, the decedent was diagnosed by the defendants with asthma and respiratory distress. Mabry, 315 Ill. App. 3d at 45. Tests, such as a VQ scan or an angiogram, could have identified an embolism if one were suspected; however, none

**10**

of these tests were performed. Mabry, 315 Ill. App. 3d at 46. This court concluded, "Negligent prescription of treatment is different from failure to prescribe treatment as a result of a failure to diagnose." Mabry, 315 Ill. App. 3d at 55. Thus, the court found that the claim of negligence in Mabry sought to establish liability, not for negligent prescription of treatment, but for the defendants' failure to diagnose and prescribe treatment, and therefore, their conduct was immune from liability. Mabry, 315 Ill. App. 3d at 58-59.

In Michigan Avenue, the Illinois Supreme Court held that where a public hospital's employees fail to diagnose an illness (breast cancer), it is immune from medical malpractice liability under section 6-106(a) of the Tort Immunity Act. Michigan Avenue, 191 Ill. 2d at 522. In Michigan Avenue, the decedent visited the defendant hospital on numerous occasions, complaining of a lump in her left breast and, sometimes, soreness or pain. Michigan Avenue, 191 Ill. 2d at 496-99. The decedent was informed she had fibrocystic breast disease. Michigan Avenue, 191 Ill. 2d at 496-99. No tests were performed by the hospital to determine whether the decedent had breast cancer. Michigan Avenue, 191 Ill. 2d at 496-99. The supreme court stated that the word "diagnosis" is not ambiguous, and thus, must be given its plain and ordinary meaning. Michigan Avenue, 191 Ill. 2d at 510. "Webster's dictionary defines 'diagnosis' as the 'art or act of identifying a disease from its signs and symptoms,' and as an

**11**

'investigation or analysis of the cause or nature of a condition, situation, or problem.' " Michigan Avenue, 191 Ill. 2d at 510, quoting Webster's Third New International Dictionary 622 (1993). Accordingly, the supreme court held that the defendant hospital was immune from liability because the essence of the plaintiff's complaint was a failure to diagnose, not a failure to treat. Michigan Avenue, 191 Ill. 2d at 522.

The plaintiff contends that the trial court's reliance on Mabry and Michigan Avenue was in error. Instead, the plaintiff urges this court to find the following cases controlling, Mills v. County of Cook, 338 Ill. App. 3d 219, 788 N.E.2d 169 (2003), Antonacci v. City of Chicago, 335 Ill. App. 3d 22, 779 N.E.2d (2002), and American National Bank & Trust Co. v. County of Cook, 327 Ill. App. 3d 212, 762 N.E.2d 654 (2001). The plaintiff argues that these cases support her contention that the defendants were negligent in their treatment of the decedent, not in their diagnosis, and, thus, liable under the Tort Immunity Act.

In Mills, the defendant physician diagnosed the decedent child with an upper respiratory infection and also made a "differential diagnosis" of pneumonia, meaning the physician considered pneumonia to be a contributing cause of the child's symptoms. Mills, 338 Ill. App. 3d at 220. The defendant conducted tests, treated the child, and then discharged him; a few hours later, the child died. Mills, 338 Ill. App. 3d at 220-

**12**

The plaintiff in <u>Mills</u> offered evidence in the form of an expert physician's testimony that the failure of the defendant physician to fully treat the child's pneumonia caused the child's death. <u>Mills</u>, 338 Ill. App. 3d at 221. The court held that sections 6-105 and 6-106(a) of the Tort Immunity Act were inapplicable because the defendant physician had properly diagnosed her patient with pneumonia, albeit a differential diagnosis, and had started treatment for that diagnosis, which was later determined to be negligent. <u>Mills</u>, 338 Ill. App. 3d at 223. In so concluding, this court found it important that "[t]reatment was rendered pursuant to the differential diagnosis." <u>Mills</u>, 338 Ill. App. 3d at 223.

In <u>American National Bank</u>, the plaintiff's doctor determined that her unborn child was in a "transverse lie," a position that could result in lack of oxygen to the child during a vaginal delivery. <u>American National Bank</u>, 327 Ill. App. 3d at 213. The complaint alleged that after this original diagnosis had been made, a second doctor was negligent in failing to perform an ultrasound or stress test to ascertain whether the child's position had changed, failing to manipulate a change to the child's position and in attempting natural delivery, which resulted in severe brain damage to the child. <u>American National Bank</u>, 327 Ill. App. 3d at 215. In reversing the trial court's grant of summary judgment in favor of the defendants, this court held that section 6-106(d) of the Tort Immunity Act applied and,

thus, the defendants were not immune from liability. This court stated:

> "[O]nce diagnosis of a medical condition is made and treatment of the condition is prescribed and undertaken, any subsequent prescription or examination required to be made pursuant to that condition is part of the patient's treatment." American National Bank, 327 Ill. App. 3d at 220.

Accordingly, American National Bank also involved the negligent treatment of a known medical condition, as opposed to a failure to diagnose. American National Bank, 327 Ill. App. 3d at 218.

In Antonacci, the plaintiff's complaint and the physician's report alleged that the defendant paramedics correctly diagnosed the decedent as having a heart attack and began to "treat" him. Antonacci, 335 Ill. App. 3d at 28. The defendant paramedics failed to perform an EKG or defibrillation on the decedent. Antonacci, 335 Ill. App. 3d at 28. Relying on section 6-106(d), the plaintiff contends that the defendant paramedics' failure to treat the decedent was not immunized by the Tort Immunity Act. Antonacci, 335 Ill. App. 3d at 28. The defendant contends that an EKG is a diagnostic tool, not a method of treatment, and thus, no "treatment" was prescribed or begun by the paramedics. Antonacci, 335 Ill. App. 3d at 28. Thus, the defendant claims that the plaintiff's claim amounts to a failure to diagnose,

**14**

which is fully immunized under section 6-106(a), or a failure to conduct an examination, immunized under section 6-105. Antonacci, 335 Ill. App. 3d at 28. This court determined that "[t]here may or may not have been a 'diagnosis' and prescribed 'treatment' that would exclude tort immunity" and, thus, remanded the case to the trial court for further proceedings. Antonacci, 335 Ill. App. 3d at 31.

In Mills and American National Bank, dismissal based on the Tort Immunity Act was precluded because the defendant doctors properly examined and diagnosed their patients. Therefore, the issue in those cases was not improper diagnoses, but improper treatment. Accordingly, because the Tort Immunity Act does not immunize a defendant for the negligent treatment of a patient, liability was warranted. See 745 ILCS 10/6-106(d) (West 2004).

In contrast to the cases she cites for support, the plaintiff has offered no evidence that treatment was rendered pursuant to a diagnosis or differential diagnosis of cancer. The defendants diagnosed Ms. Newsome only with pregnancy and a vaginal infection and, thus, treated her only for those conditions. Accordingly, contrary to the plaintiff's assertion, Mills and American National Bank are not controlling here because no treatment was undertaken pursuant to a correct diagnosis. Additionally, we find Antonacci provides no assistance in determining the issue before us now because no position was taken by this court as to whether the Tort Immunity Act provided

**15**

immunity for the defendant paramedics' actions.

Furthermore, the plaintiff's attempt to distinguish Michigan Avenue and Mabry is unpersuasive. The alleged negligence in this case, similar to that in Michigan Avenue and Mabry, was not based on the treatment Newsome received, but on the treatment that she should have received had the defendants correctly examined and diagnosed all of her medical conditions. Accordingly, as the trial court was, we are similarly persuaded by the reasoning of the Michigan Avenue and Mabry courts.

Although the plaintiff adamantly asserts that a disputed factual matter exists in this case, we find no real dispute as to the facts on the relevant question before this court, whether the defendants were entitled to immunity under the Tort Immunity Act. The evidence, when viewed in a light most favorable to the plaintiff, supports the conclusion that immunity was warranted because the essence of the plaintiff's action against the defendants was the defendants' failure to properly examine and diagnose Ms. Newsome with cervical cancer, not the negligent treatment of it. Whether immunity was warranted was strictly a matter of law and, thus, properly resolved by summary judgment. The trial court properly applied the case law and concluded that the defendants never made a diagnosis for which they were negligent in their treatment. Thus, we find the defendants' failure to diagnosis Ms. Newsome's precancerous or cancerous condition immune from liability under sections 6-105 and 6-106(a)

**16**

of the Tort Immunity Act.  745 ILCS 10/6-105, 6-106(a) (West 2004).

II

Next, the plaintiff contends that the trial court improperly resolved a credibility issue with regard to Dr. Ahuja's testimony by granting summary judgment in favor of the defendants.  We disagree.

Although Dr. Ahuja testified that the characteristics present on Ms. Newsome's Pap smear slides could be present in cancerous, precancerous or normal conditions, she clearly testified that she never suspected a cancerous or precancerous condition.  Therefore, we find that her testimony was consistent with the defendants' position -- that no treatment was undertaken to treat the cancer because it was never diagnosed.

Additionally, there was no other evidence presented that a cancerous or precancerous condition was diagnosed.  Ching testified that after reviewing Ms. Newsome's Pap smear slides, he concluded that they yielded an abnormal result.  However, he explained that he was not trained to make a determination as to what could have triggered the abnormal results.  The slides were then reviewed by Dr. Ahuja, who noted her findings and concluded that the conditions that prompted Ching to consider the Pap smear abnormal were the result of Ms. Newsome's vaginal infection.  The infection was treated and no further diagnoses were made.  Dr. Leuchter testified that in his opinion, Ms. Newsome's Pap smear slides should have shown the presence of precancerous or cancerous cells, but he admitted that he never reviewed the slides.  Accordingly, his deposition testimony presented no evidence that disputed the facts as presented by Ching and

**17**

Dr. Ahuja. Thus, we find summary judgment proper as the right of the moving party "is clear and free from doubt." Purtill, 111 Ill. 2d at 240.

## CONCLUSION

In conclusion, applying the plain language of sections 6-105 and 6-106(a) of the Tort Immunity Act to the facts before us, we find the defendants immune from medical malpractice liability. Accordingly, because no material factual dispute was presented, summary judgment was properly granted in favor of the defendants. Affirmed.

WOLFSON and R. GORDON, JJ., concur.

JACQUELINE WILKERSON, Successor Special Administrator
of the Estate of Beverly Newsome, Deceased,

        Plaintiff-Appellant,

      v.

THE COUNTY OF COOK, d/b/a Cook County Hospital;
JAYA AHUJA, and HENRY CHING,

        Defendants-Appellees.            .

---

**No. 1-07-0294**
**Appellate Court of Illinois**
**First District, First Division**

**Filed: February 25, 2008**

---

**JUSTICE GARCIA delivered the opinion of the court.**

**Wolfson and R. Gordon, JJ., concur.**

---

**Appeal from the Circuit Court of Cook County**
**Honorable Marcia Maras, Judge Presiding**

---

| | |
|---|---|
| For DEFENDANTS -<br>APPELLEES | Patrick T. Driscoll, Jr., Chief, Civil Actions Bureau<br>Patrick M. Blanchard, Chief, Special Litigation Division<br>Sandra J. Weber, Supervisor, Medical Litigation Section<br>Thomas A. Rieck, Assistant State's Attorney, Of Counsel<br>RICHARD A. DEVINE<br>State's Attorney of Cook County<br>Richard J. Daley Center–Room 500<br>Chicago, Illinois 60602 |
| For PLAINTIFF -<br>APPELLANT | Thomas G. Siracusa, Of Counsel<br>POWERS ROGERS & SMITH, P.C.<br>70 West Madison, 55th Floor<br>Chicago, Illinois 60601 |