FIRST DIVISION

August 15, 2005

1-04-1927

 

GWENDOLYN A. SIMS-HEARN,          ) Appeal from the

 ) Circuit Court of

Plaintiff-Appellant, ) Cook County

 )

v. ) No.: 04 M1 014038

 )

OFFICE OF THE MEDICAL EXAMINER, ) Honorable 

COUNTY OF COOK, 
ROBERT J. STEIN,    ) Moira S. Johnson INSTITUTE OF FORENSIC MEDICINE, ) Judge Presiding

 )

Defendant-Appellee, )

 

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Gwendolyn Sims-Hearn, filed a claim in the Court of Claims, seeking compensation pursuant to the Crime Victims Compensation Act (740 ILCS 45/1 
et seq
. (2000)), for the death of her son.  She claimed her son was murdered because he had witnessed a murder.  After the Court of Claims denied her claim, plaintiff filed a 
pro se
 negligence action against defendant Office of the Medical Examiner of Cook County, alleging that defendant's negligent autopsy resulted in the Court of Claims denying her claim.  Defendant then filed a motion to dismiss this complaint on the basis that the complaint was factually insufficient, barred by the applicable statute of limitations, and that defendant owed no legal duty of care to plaintiff pursuant to the public duty rule.  The trial court granted defendant’s motion to dismiss with prejudice.

On appeal, plaintiff contends that the trial court erred by failing to provide her with an opportunity to amend her complaint prior to granting defendant's motion to dismiss.  In particular, she argues that had the trial court allowed her to amend her complaint, she could have successfully pled that defendant breached a "special duty" owed to her.  For the reasons that follow, we affirm. 

BACKGROUND

The relevant facts of this case are as follows.  On September 11, 1999, plaintiff’s son, Willie Sims III, was found dead in a Chicago Housing Authority building.  Prior to defendant issuing its report of postmortem examination (report), plaintiff contacted Dr. Filkins at the medical examiner's office to express her belief that her son was murdered because he had witnessed a murder.  Plaintiff also informed Dr. Filkins that she planned on suing the Chicago Housing Authority.  After examining the body, defendant ascertained that plaintiff’s son died from cocaine and opiate intoxication, and therefore issued a report on November 10, 1999, which characterized the death as "accidental."  While reading this report, plaintiff found what she characterized as various errors.  In particular, plaintiff alleged that defendant erroneously recorded her son's weight, height, age, name, and home address.  She also asserted that defendant failed to notice and record various needle marks located on her son's body.      

Thereafter, plaintiff filed a claim in the Court of Claims seeking compensation pursuant to the Illinois Crime Victims Compensation Act.  The court denied plaintiff's claim on June 13, 2000, on the basis that her son's death was not the result of a violent crime but, rather, a drug overdose.  The court cited defendant's report as one basis for this conclusion.

Pursuant to plaintiff's request, the Court of Claims conducted a hearing for her claim on April 29, 2002.  At this hearing, plaintiff introduced into evidence defendant's report, which demonstrated that cocaine, morphine, and benzoylecgonine were all present in her son's system.  After emphasizing that there was no mention in the report of any puncture marks on her son's left inner arm, plaintiff introduced postmortem photographs into evidence which depicted 10 puncture wounds on her son's left inner arm.  Plaintiff then testified that on the day of her son's death she observed no needle marks on her son and that she believed he would not have worn a short-sleeved shirt on that day if he had needle marks on his arm.  Accordingly, plaintiff believed that her son had been forcibly injected with drugs against his will.  Plaintiff's daughter testified that although her brother "smoked crack," he hated needles and would never have injected himself with a needle.  The daughter further stated that her brother was afraid because he had witnessed a murder.  Plaintiff also alleged that there were various errors in the "police reports" regarding her son's death.  The court concluded that based on the above evidence, the plaintiff had failed to meet her burden of proving by a preponderance of the evidence that her son died as the result of a violent crime.  The court therefore affirmed the order entered on June 13, 2000, denying plaintiff's application for benefits under the Crime Victims Compensation Act.  

Thereafter, plaintiff contacted a police officer at Area 4 who told plaintiff that she needed to challenge defendant's report before the police could "do anything for her." Plaintiff then contacted defendant and inquired how to challenge the report.  Plaintiff claimed that Dr. Edmund Donoghue, an employee at the medical examiner's office, repeatedly told her that she could not challenge the report.  After expressing her concerns to the County Board, however, Donoghue advised plaintiff to write him a letter explaining why the report should be modified.  Plaintiff then submitted two letters which contained funeral home photographs which depicted her son's body.  In these letters, plaintiff noted the absence of any notations in the defendant's report concerning the fresh needle marks on her son's arms or the fingernail mark on her son's face, which were evident in the photographs taken of her son at the funeral home.  She further noted that the report incorrectly listed or depicted her son's weight, age, name, and hair length. She also requested that the report be altered to reflect that her son's death was a homicide.

On August 12, 2003, the medical examiner's office mailed a letter to plaintiff.  This letter stated that the report would be modified to change her son's address and name.  Specifically, defendant changed the name on the report from "Willie Simms Jr." to "Willie Simms III."  Defendant also indicated that their was indeed an abrasion located on the son's face, but that the report accurately recorded his height, weight, and age.  Defendant refused to modify the report to record the needle marks evident in plaintiff's pictures because the marks were not present in the photographs taken at the time of the autopsy.  Defendant concluded its letter by stating:  "Having examined copies of your photographs and the autopsy photographs there is no new evidence that supports changing the manner of death from accident to homicide."  Defendant then issued a revised report containing these corrections.  

On April 12, 2004, plaintiff filed a
 pro se 
complaint in the Circuit Court of Cook County alleging that the "Coroner’s negligent action caused [her] to lose [her] claim in court."    

On May 13, 2004, defendant filed a motion to dismiss pursuant to sections 2-615(a), 2-619(a)(5), and 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-615(a), 2-619(a)(5), 2-619.1 (West 2002)), arguing, 
inter alia
, that:  (1) plaintiff's complaint failed to allege any facts which would support a legally cognizable cause of action; (2)the statute of limitations barred plaintiff's complaint; and (3) defendant owed no duty of care to plaintiff pursuant to the public duty rule.  The circuit court granted defendant's motion to dismiss with prejudice but did not provide grounds for its dismissal.  This appeal followed. 

 ANALYSIS 

Plaintiff first contends that the trial court erred by failing to provide her with an opportunity to amend her complaint prior to granting defendant's motion to dismiss.  She maintains that she could have successfully pled that defendant breached a "special duty" owed to her.   

Defendant responds that it owes no duty of care to plaintiff pursuant to the public duty rule and that plaintiff failed to comply with the statute of limitation period provided for under the Local Governmental and Governmental Employees Tort Immunity Act (the Act)(
745 ILCS 10/8-101 (West 2000)
).  Therefore, defendant argues that plaintiff could not have cured her initial complaint by amendment.  We agree.

Whether a local governmental entity owes a duty of care and whether that entity enjoys immunity pursuant to the Act are separate inquiries.  
Arteman v. Clinton Community Unit School District No. 15
, 198 Ill. 2d 475, 479-80 (2002)("the Act does not create duties, but merely articulates which of the delineated immunities apply to certain common law duties"), citing 
Vesey v. Chicago Housing Authority
, 145 Ill. 2d 404, 412 (1991).  Therefore, the threshold issue to address before we consider the applicability of the Act’s protections is whether defendant owed any duty of care to the plaintiff under the circumstances.  
Arteman
, 198 Ill. 2d at 480.

A trial court may dismiss a complaint for failure to state a cause of action with no opportunity to replead if it is clearly apparent that no set of facts can be proven which will entitle plaintiff to recovery.  
Jackson v. Michael Reese Hospital & Medical Center
, 294 Ill. App. 3d 1, 18 (1997), citing 
Illinois Graphics Co. v. Nickum
, 159 Ill. 2d 469, 488 (1994).  

After reviewing the record, we conclude that plaintiff could not have cured her complaint by an amendment because defendant owed no duty of care to plaintiff pursuant to the public duty rule.  Our supreme court has established that to properly state a cause of action for negligence a plaintiff must plead that a defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of plaintiff's injuries.  
Mt. Zion State Bank and Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 116 (1995).  If there is no duty owed to the plaintiff by the defendant, it is axiomatic that the plaintiff cannot recover from the defendant.  
Mt. Zion
, 169 Ill. 2d at 116.  

Pursuant to the common law public duty rule, governmental entities generally owe no duty to provide an individual citizen with municipal services, such as police and fire protection.  
Zimmerman v. Village of Skokie
, 183 Ill. 2d 30, 32 (1998).  This rule shields municipalities and their employees from liability when conducting customary duties toward the public at large.  
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634 (1996).  Although our court has not previously examined whether a medical examiner owes a duty of care to individual citizens to perform customary duties such as autopsies, our review of persuasive authority from sister states, a decision of the Seventh Circuit Court of Appeals, as well as the ordinance delineating the responsibilities of the Cook County medical examiner, convinces us that no such duty exists.

In the matter of 
Otero v. Warnick
, 241 Mich. App. 143, 145, 614 N.W.2d 177, 179 (2000), plaintiff attempted to impose liability on a forensic odontologist working for the county medical examiner because the findings from his investigation and his testimony at a preliminary examination led to the plaintiff's prosecution for murder.  The odontologist testified at this hearing that plaintiff was the only person in the world who could have inflicted the bite marks on the victim's body.  Later, a different forensic odontologist solicited by the plaintiff concluded that the bite marks found on the victim's body were too indistinct to include or exclude any suspect.  As a result of this second opinion, the charges against the plaintiff were dismissed, and plaintiff sued the first odontologist for gross negligence.  The trial court granted summary judgment in favor of the forensic odontologist, concluding that the public duty rule dictated that he owed no duty of care to the plaintiff.  
Otero
, 241 Mich. App. at 145, 614 N.W.2d at 178.  The appellate court affirmed the trial court, concluding that although the forensic odontologist may have prepared his report in an "incompetent" and "reprehensible" manner, the medical examiner's only duty was to the state and the county medical examiner.  
Otero
, 241 Mich. App. at 148-153, 614 N.W.2d at 180-82.  In so concluding, the appellate court reasoned that: "Nothing in the statutory scheme has created duties to a criminal defendant; instead, the duty is owed to the state."  
Otero
, 241 Mich. App. at 148-149, 614 N.W.2d at 180.    

Similarly, in 
Lauer v. New York
, 95 N.Y.2d 95, 97-98, 711 N.Y.S.2d 112, 114, 733 N.E.2d 184, 186 (2000), a negligent autopsy by a municipal medical examiner resulted in the police investigation of a plaintiff for the death of her son.  Despite a subsequent autopsy performed by this same medical examiner and a neuropathologist which indicated that the plaintiff's son had died from a brain aneurysm, the medical examiner failed to modify its original report or notify law enforcement authorities until a newspaper article revealed the findings of the subsequent report.  The plaintiff then sued the City of New York for, 
inter alia
, the negligent infliction of emotional distress.  On appeal, the court addressed whether a medical examiner owed a duty of care to the plaintiff under the circumstances.  Although acknowledging that "[n]o one disputed the Medical Examiner's misconduct," the court noted that the statute delineating the responsibilities of the medical examiner indicated that the medical examiner's duties were performed for the public's benefit.  
Lauer
, 95 N.Y.2d at 99-102, 711 N.Y.S.2d at 114-17, 733 N.E.2d at 186-89.  Thus, according to the court, the statute was not intended to protect members of the general public or individuals like the plaintiff who may become criminal suspects.  
Lauer
, 95 N.Y. 2d at 102, 711 N.Y.S.2d at 117, 733 N.E.2d at 189.  Moreover, the court concluded that "[p]ermitting recovery *** would radically enlarg[e] both the responsibility of the Office of the Chief Medical Examiner and the potential liability of the City."  
Lauer
, 95 N.Y.2d at 102, 711 N.Y.S.2d at 117, 733 N.E.2d at 189.  

The reasoning in the above cases persuades us that medical examiners owe no duty of care to members of the public while performing their customary duties, such as autopsies.  Similar to the ordinances and statutes in 
Lauer
 and 
Otero
, the Cook County ordinances that outline the responsibilities of the office of the medical examiner support the inference that the office works on the behalf of the public at large, not individuals.  Specifically, the ordinance requires that the medical examiner investigate any deaths that fall within certain enumerated categories, which, in part, include: criminal violence, suicide, accident, and suspicious and unusual circumstances.  Ordinances and Resolutions of the County of Cook Medical Examiner § 5--128--9.  Where a death can be characterized under one of these enumerated categories, the ordinance instructs the medical examiner to conduct an autopsy to sufficiently establish the cause of death, to recover and retain evidence used for the investigation, and to inform the office of the State's Attorney if the medical examiner determines that the cause of death may be caused by criminal conduct.  Ordinances and Resolutions of the County of Cook Medical Examiner §§ 5--128--10, 5--131--12.  Nothing within these provisions supports the conclusion that the medical examiner owes a duty of care to individuals in plaintiff's position.  Moreover, we agree with the analogy expressed by the Seventh Circuit Court of Appeals in 
Kompare v. Stein
, 801 F. 2d 883, 884 (7th Cir. 1986), 
that a medical examiner's function in performing an autopsy is analogous to that of a police officer investigating a suspected homicide.  They both investigate deaths, in part, to protect the public from future crime.  Accordingly, the rationale underlying the public duty rule seems equally applicable to both professions, namely, that a municipality's duty is to preserve the " 'well-being of the community' " and that this duty is " 'owed to the public at large rather than to specific members of the community.' "   
Zimmerman
, 183 Ill. 2d at 44, quoting 
Schaffrath v. Village of Buffalo Grove
, 160 Ill. App. 3d 999, 1003 (1987).  Thus, we see no reason not to extend to medical examiners the same protection afforded to police officers pursuant to the public duty rule and, as a consequence, we conclude that defendant owed no duty of care to plaintiff.  

We also deem plaintiff's reliance on the special duty doctrine misplaced.  In Illinois, a party may invoke the special duty doctrine to defeat a claim by a municipality that it is protected by the public duty doctrine.  
Doe v. Calumet City
, 161 Ill. 2d 374, 385-86 (1994).  The special duty doctrine operates in limited circumstances where a governmental entity has assumed a special relationship to an individual " 'so as to elevate that person's status to something more than just being a member of the public.' "  
Zimmerman
, 183 Ill. 2d at 33, quoting 
Schaffrath
, 160 Ill. App. 3d at 1003.  Relying on this doctrine
, plaintiff contends that the contacts she initiated with defendant created a "special duty" owed to her by defendant.  We are not persuaded by her argument.  Our supreme court has created a four-part test to apply when analyzing whether a plaintiff may utilize the special duty rule:  

"(1) The municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there must be specific acts or omissions on the part of the municipality; (3) the specific acts must be affirmative or willful in nature; and (4) the injury must occur while the plaintiff is under the direct and immediate control of municipal employees or agents."  
Doe
, 161 Ill. 2d at 386. 

Assuming, 
arguendo
, that plaintiff can plead and prove that defendant committed specific acts which were affirmative or willful in nature, plaintiff has not met the remaining requirements, 
i.e.
, there is no indication here that plaintiff was exposed to any danger from the defendant's autopsy report or that plaintiff was under defendant's exclusive control when her "injury" occurred.  Plaintiff alleges in her complaint that defendant's autopsy report precluded her from recovering compensation pursuant to the Illinois Crime Victims Compensation Act.  We are aware of no precedent, and plaintiff cites to none, where "danger" is defined within the context of special duty analysis in terms of financial loss.  Furthermore, plaintiff neither claims that she was under the exclusive control of defendant when her "injury" occurred, nor cites to any evidence or authority that would support such a conclusion.  Plaintiff's use of the special duty doctrine is therefore unavailing.    

Thus, we find that defendant owed no duty of care to plaintiff and, as a consequence, plaintiff could not have cured her defective pleading.  Accordingly, the trial court did not err by not affording plaintiff an opportunity to amend her complaint.

The dismissal of plaintiff's action was proper on a separate basis.  The Act provides that a plaintiff may not file suit against a local entity for an injury more than one year from the date that the plaintiff received her injury.  745 ILCS 10/8-101 (West 2000).  Our supreme court has previously determined that a statute of limitations period commences when a party knows or reasonably should know that an injury was caused and that it was wrongfully caused.  
Hermitage Corp. v. Contractors Adjustment Co.
, 166 Ill. 2d 72, 86 (1995).  On June 18, 2000, in its order denying plaintiff's application for compensation, the court cites defendant's report as one basis for its denial.  Specifically, the court noted: "the Medical Examiner's Death Certificate show[s] that the cause of injury was a drug overdose."  We see no reason why such a pronouncement was not sufficient to notify plaintiff as to a cause for the denial of her claim.  As this date preceded plaintiff's complaint in the trial court by nearly four years, plaintiff exceeded the statute of limitations period set forth in the act by almost three years.  Plaintiff's complaint was therefore appropriately dismissed on that basis.

We reject, as untenable, plaintiff's argument that defendant's letter refusing to modify its conclusion in its initial report constituted the relevant date for calculating the statute of limitations period.  Based on this logic, plaintiff could have tolled indefinitely the statute of limitations period by merely resubmitting requests to defendant to modify its conclusion.  We believe that such an interpretation of the Tort Immunity Act is unreasonable and therefore refuse to adapt it.  
See, 
e.g.
, 
Estate of Heanue v. Edgcomb
, 355 Ill. App. 645, 650 (2005)(ཁStatutes, of course, must be construed to avoid absurd resultsཁ).  
  

CONCLUSION  

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.
 

CAHILL, P.J., and McBRIDE, J., concur.