# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Taylor v. Bi-County Health Department*, 2011 IL App (5th) 090475

---

| | |
|---|---|
| Appellate Court Caption | LOGAN TAYLOR, a Minor, Through His Mother, Cora Taylor, and CORA TAYLOR, Individually, Plaintiffs-Appellants, v. BI-COUNTY HEALTH DEPARTMENT, Defendant-Appellee, and NANCY BIRNER, M.D., and RED BUD INTERNAL MEDICINE AND PEDIATRICS, Defendants. |
| District & No. | Fifth District<br>Docket No. 5-09-0475 |
| Filed | August 4, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed plaintiffs' action alleging that defendant health department was negligent in failing to administer Prevnar as part of the childhood vaccines given to the minor plaintiff on the grounds that defendant had no individual duty to the minor, and, further, in the absence of evidence of control, plaintiffs could not establish the special duty exception to the public duty rule, and defendant did not voluntarily undertake a duty, and in the absence of any duty, no claim under a willful and wanton conduct theory could be maintained. |
| Decision Under Review | Appeal from the Circuit Court of Randolph County, No. 07-L-7; the Hon. William A. Schuwerk, Jr., Judge, presiding. |
| Judgment | Affirmed; cause remanded. |

| Counsel on Appeal | Lanny H. Darr II, of Schrempf, Kelly, Napp & Darr, Ltd., of Alton, for appellants. |
| | |
| | Donald J. Dahlmann, of Waler & Williams, P.C., of Belleville, and Christopher B. Turney and Steven B. Moore, both of Rasmussen Willis, Dickey & Moore, of Kansas City, Missouri, for appellee. |
| | |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion. |
| | Justices Welch and Donovan concurred in the judgment and opinion. |

**OPINION**

¶ 1     Cora Taylor, individually and on behalf of her minor son, Logan Taylor, appeals from the trial court's orders granting a summary judgment in favor of Randolph-Monroe Bi-County Health Department, also known as Bi-County Health Department (Bi-County Health), and dismissing with prejudice the counts of the plaintiffs' amended complaint directed at Bi-County Health. The allegations of the amended complaint directed at Nancy Birner, Logan's pediatrician, and Red Bud Internal Medicine and Pediatrics (Red Bud Pediatrics) have not been dismissed. In the complaint against Bi-County Health, the plaintiffs alleged negligent failure to administer pneumococcal conjugate (PCV7), commonly referred to as Prevnar, as part of the group of childhood vaccines given to Logan and that, as a result, he contracted pneumococcal bacterial disease, more commonly referred to as meningitis. As a result of contracting meningitis, Logan has brain damage, is developmentally delayed, and has bilateral hearing loss. The issues on appeal concern whether Bi-County Health had a duty to administer Prevnar to Logan as an individual, whether Bi-County Health assumed a special duty or voluntarily undertook a duty on behalf of Logan, and the propriety of the dismissal of the counts of the amended complaint directed at Bi-County Health. We affirm and remand.

¶ 2                                             BACKGROUND
¶ 3                                        Factual Background
¶ 4     Logan was born on December 30, 2004. Dr. Birner, who worked for Red Bud Pediatrics, was his pediatrician. Dr. Birner saw Logan on January 14, 2005, for his two-week checkup and again on March 2, 2005, for his two-month checkup. When Logan was two months old, Cora began taking him to Bi-County Health for his immunizations rather than having Dr.

Birner give him the vaccines. The parties agree that, on three separate dates in 2005, Logan received several vaccines at Bi-County Health. Those vaccines included diphtheria, tetanus, and pertussis (DTP), polio, *Haemophilus influenzae* type B (HIB), and hepatitis B (Hep B). He did not receive Prevnar, the vaccine recommended by the Centers for Disease Control (CDC) and the American Academy of Pediatrics (AAP) for the prevention of several strains of meningitis. In 2005, both Red Bud Pediatrics and Bi-County Health participated in the federally funded Vaccines for Children (VFC) program, under which free vaccines were provided to eligible children ages 18 and younger. Additionally, in 2005, the VFC program, the CDC, and the AAP each recommended that all children receive the Prevnar vaccine at 2 months, 4 months, and 6 months and that all children receive a booster of Prevnar sometime between 12 and 15 months. However, children in Illinois were not required to have the Prevnar vaccine before entering daycare or public school in 2005.

¶ 5 Thomas G. Smith, the administrator of Bi-County Health, testified in a deposition that, in 2005, Bi-County Health administered Prevnar only to children who were attending daycare because children attending daycare are at greater risk of contracting pneumococcal disease. When Cora brought Logan to Bi-County Health for his vaccines, she filled out a questionnaire at each visit in 2005 in which she stated that Logan was not attending daycare. Smith testified that, although Logan qualified to receive VFC vaccines because he was a Medicaid recipient, Bi-County Health did not administer the Prevnar vaccine to him because he was not enrolled in daycare. Smith explained that there are two classes of vaccines administered under the VFC program: those that are required for all children and those, like Prevnar, that are recommended for all children but are not required. He testified that, in 2005, Illinois children were considered "fully immunized" without having had the Prevnar vaccine if the rest of the immunizations required for enrollment in daycare or school were current.

¶ 6 Smith testified that Bi-County Health developed its policy of providing Prevnar to otherwise qualifying children only if they were enrolled in daycare based on information from the CDC and the Illinois Department of Public Health (Public Health Department). He stated that, in 2005, Bi-County Health had only two nurses on staff to administer vaccines. He explained that they "tried to weigh the risks involved" against their resources. The "competing interests" involved in the development of the policy included Bi-County Health's resources, personnel, and funding; the availability of supplies; and their goal of "reducing morbidity and mortality in the community."

¶ 7 Smith testified about a memo drafted in 2001 by Pamela Birchler, Bi-County Health's director of nursing. Smith stated that the 2001 memo was in effect in 2005 when Logan was receiving vaccines at Bi-County Health. In the 2001 memo, Birchler informed the Bi-County Health staff members about the Prevnar vaccine and listed the VFC eligibility criteria for its administration. In the memo, among other considerations, Birchler requested the staff to "encourage" their clients to consider immunizing their children with Prevnar if they attended daycare "at least 4 hours/week." Smith testified that, other than the 2001 memo, Bi-County Health had no written policy statement about the decision to administer Prevnar only to children enrolled in daycare.

¶ 8 Birchler testified that, for Bi-County Health to participate in the VFC program, they had to complete a form stating that they would "go along with the guidelines." She explained that

-3-

Illinois did not have any state regulations governing which vaccines Bi-County Health was supposed to administer to children but that there were state regulations determining which vaccines were required for children to enroll in daycare or public school. Prevnar was not required for children to enroll in daycare or public school. Birchler testified that Logan did not receive the Prevnar vaccine from Bi-County Health because he was not enrolled in daycare and he did not have a high-risk disease. She testified that, in 2006, Bi-County Health changed its policy and began administering the Prevnar vaccine to all children regardless of daycare enrollment at ages 2 months, 4 months, and 6 months, with a booster given between 12 and 15 months, if the child otherwise met the VFC criteria.

¶ 9 During the months that Logan was receiving his vaccinations at Bi-County Health, Cora was also taking him to Dr. Birner for regular checkups and when he was sick. On December 14, 2005, Cora brought Logan to Red Bud Pediatrics for a daycare physical. By that time, Logan had received all the vaccines required for his enrollment at daycare, but he had not yet received a Prevnar vaccination. Cora brought Logan back to Dr. Birner's office on December 28, 2005. At that visit, Cora told Dr. Birner that Logan had fevers on and off since Christmas, that he was teething, that he was pulling at his ear, that his appetite had decreased, and that he was sleeping more. Dr. Birner diagnosed him with a right ear infection. She gave Cora antibiotics for Logan and saw him again on January 3, 2006, for his 12-month checkup. Cora brought Logan back to Dr. Birner's office twice in January 2006, three times in February 2006, and twice in March 2006, and each time Logan continued to have ear infections. Dr. Birner testified that she thought the ear infections were getting worse because he had started attending daycare and was getting reinfected due to his exposure to other children at daycare.

¶ 10 On April 3, 2006, Cora brought Logan, who was 16 months old, to Red Bud Pediatrics for his vaccinations. Dr. Birner explained that Cora's insurance had changed so that Logan was no longer covered under Medicaid for vaccines, but he was still qualified to receive VFC vaccines through Red Bud Pediatrics. On that day, a physician's assistant administered the DTP and Prevnar vaccines to Logan. Kathy Thies, a nurse at Red Bud Pediatrics, testified that the reason the physician's assistant administered Prevnar to Logan on April 3, 2006, was that, when she reviewed Logan's chart, she realized that he had not been receiving the Prevnar vaccine. Thies testified that, in 2005, Bi-County Health informed Red Bud Pediatrics by fax about what vaccines Logan had received and when they had been administered. Thies stated that Red Bud Pediatrics was aware in 2005 that Logan had not received any Prevnar vaccinations. She testified that, if Logan had received his immunizations at Red Bud Pediatrics, he would have received the Prevnar vaccine at ages two months, four months, and six months, along with the other vaccines he had received at Bi-County Health.

¶ 11 In an affidavit, Cora stated that she was "not familiar with all of the vaccines Logan was to receive" and that she "relied on Dr. Birner and her office, as well as [Bi-County Health], to be knowledgeable as to what immunizations Logan was to receive." She stated that no one at either office ever told her that Logan was not receiving Prevnar even though the CDC recommended it. She averred that she was unaware of Bi-County Health's policy of administering Prevnar only to children enrolled in daycare, that she never refused any immunizations for Logan, including Prevnar, and that if she had known about Prevnar, she

would have demanded that he receive it.

¶ 12    On June 14, 2006, Cora brought Logan to Red Bud Pediatrics. Logan had a fever and was vomiting, holding his throat as if it hurt, and pulling on or holding both ears. The next day, Cora took Logan to the emergency room because he was difficult to arouse and looked dehydrated. Logan was transferred that day to Cardinal Glennon Children's Hospital, where he tested positive for meningitis. Thereafter, he spent several months in the hospital and at the Knights of Columbus Development Center for rehabilitation.

¶ 13                                    Procedural History

¶ 14    There is an extensive record of trial court proceedings in this case, but our review in this appeal is limited to the issues between Bi-County Health and the plaintiffs. Therefore, we recount only the procedural history relevant to the issues we are to decide. On January 5, 2009, Bi-County Health filed a motion for a summary judgment, alleging that it is a public entity created by statute (55 ILCS 5/5-25001 *et seq.* (West 2008)). In the motion, Bi-County Health alleged that one of its functions is to "prevent the transmission of communicable diseases." Bi-County Health alleged that, due to "competing interests and limited resources," it allocated the Prevnar vaccine in a manner that would strategically cover the broadest portion of Monroe and Randolph Counties. It alleged that its policy of giving Prevnar only to children enrolled in daycare gave priority to the highest-risk children who posed the greatest danger of spreading meningitis. Bi-County Health argued that, in 2005, because Logan was not enrolled in daycare, "he was not eligible for Prevnar" and, accordingly, did not receive the "elective Prevnar vaccine when he received his other vaccinations (which were required for school and daycare admission in Illinois)." Bi-County Health attached to the motion for a summary judgment a copy of section 695.10 of title 77 of the Illinois Administrative Code, which sets forth the "Basic Immunization" requirements for children two months of age and older entering school or a "child care facility" in Illinois. 77 Ill. Adm. Code 695.10, amended at 26 Ill. Reg. 10792, eff. July 1, 2002. That section lists 10 required vaccines, but the Prevnar vaccine is not included in that list.

¶ 15    In the motion for a summary judgment, Bi-County Health argued that, because it is a "creature of statute," it had the discretionary authority to restrict administration of the Prevnar vaccine. Bi-County Health argued that it owed no duty to Logan as an individual because its duty is solely to the public it serves and that because it had no duty to Logan, the plaintiffs could maintain no action in negligence against it. Bi-County Health also argued that its policy of limiting Prevnar to children enrolled in daycare was a discretionary act that was not actionable:

> "[Bi-County Health] was not required by statute or other authority to provide Prevnar to all individuals. To the contrary, [Bi-County Health] had the statutory authority to 'initiate and carry out programs and activities of all kinds, not inconsistent with law, that may be deemed necessary or desirable in the promotion and protection of health and in the control of disease including tuberculosis.' 55 ILCS 5/5-25013(B)(1) [(West 2008)]. The 'deemed necessary or desirable' language illustrates the discretion involved in developing such programs."

Bi-County Health asserted that allowing the plaintiffs' case to proceed against it improperly created a "precedent of individuals controlling public resources based upon their individual–not public–interests," which entitled it to a summary judgment.

¶ 16    Bi-County Health also argued that it was entitled to a summary judgment because it was immune from liability pursuant to section 6-104(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/6-104(a) (West 2008)). Bi-County Health argued that it was entitled to the immunity of section 6-104(a) because it is a local public entity being sued for an injury allegedly resulting from a policy decision to perform or not perform an act to promote the public health of the community, a proper exercise of its discretion.

¶ 17    In response, the plaintiffs argued that Bi-County Health owed a "special duty" that it had "voluntarily assumed" when it agreed to vaccinate Logan. They contended that, although Bi-County Health had no duty to initiate a vaccine program, when it enrolled in the VFC program, it acquired a "mandatory obligation to act in a non-negligent manner when administering vaccines." The plaintiffs also argued that Bi-County Health was not entitled to statutory immunity because it failed to exercise due care in carrying out the voluntary immunization program. In support of this argument, the plaintiffs relied on section 6-104(b) of the Tort Immunity Act (745 ILCS 10/6-104(b) (West 2008)).

¶ 18    The plaintiffs argued that the jury should be allowed to decide if Bi-County Health's policy was ill-conceived and not a proper discretionary act. They reminded the court that their claims against Bi-County Health were not limited to its failure to provide Prevnar but that they had also asserted negligence in Bi-County Health's failure to inform them of the benefits of receiving Prevnar and the perils of not receiving it. The plaintiffs claimed that Bi-County Health's failure to inform Logan's family that he was not receiving Prevnar or refer them to a location where Logan could get Prevnar was not a discretionary act entitled to immunity. In the alternative, the plaintiffs requested leave to file an amended complaint to plead willful and wanton conduct, if the court found that Bi-County Health owed no special duty to Logan.

¶ 19    On March 26, 2009, the trial court entered a summary judgment in favor of Bi-County Health, finding that it had exercised its discretion as a governmental entity in developing its Prevnar policy and that, accordingly, it owed no individual duty to Logan. The court found as follows:

"In allocating its resources, [Bi-County Health] was required to make judgment calls among competing interests in determining how, in its discretion, to address communicable diseases in the community and, therefore, had no duty to Logan *** as an individual. Accordingly, the Plaintiffs cannot prove the necessary element of duty to establish their claims that [Bi-County Health] was negligent in not vaccinating Logan *** with the Prevnar vaccination in accordance with its policy."

¶ 20    In its order, the court ruled that, because Bi-County Health owed the plaintiffs no individual duty, they could not prove that it had failed to fully educate or advise them regarding its Prevnar policy. The court found as follows: (1) Bi-County Health is a local public entity, (2) the plaintiffs brought their suit against Bi-County Health for an injury

allegedly resulting from a policy decision, (3) Bi-County Health's policy decision to limit the administration of Prevnar to children enrolled in daycare was "to either perform or not perform an act to promote the public health of the community, i.e.[,] allocating resources associated with vaccinating the citizens of Monroe and Randolph Counties," (4) Bi-County Health's policy decision was to prevent disease or control the communication of the disease within Monroe and Randolph Counties, and (5) Bi-County Health's decision "was the result of an exercise of discretion vested in the local public entity." The court determined that there was no genuine issue of material fact and, accordingly, granted Bi-County Health's motion for a summary judgment on all the claims against it.

¶ 21    On April 3, 2009, the plaintiffs filed a motion to vacate the court's entry of a summary judgment. In that motion, the plaintiffs argued that the court should have found a special duty owed to Logan because a "nurse/patient relationship existed between Logan and [Bi-County Health]" that "elevated this child above that of the general public and gave rise to a special duty." The plaintiffs contended that, even if no duty existed at common law, Bi-County Health assumed a duty when it enrolled in the VFC program and "agreed to accept responsibility to immunize Logan." The plaintiffs argued that, when Bi-County Health signed the Public Health Department's provider enrollment form, it "agreed to comply with the immunization schedule" formulated by the CDC and the AAP. The plaintiffs attached that provider enrollment form to the motion to vacate, which provides, in relevant part, "I will comply with the appropriate immunization schedule, dosage and contraindications established by the DHHS [United States Department of Health and Human Services] Advisory Committee on Immunization Practices, unless (a) *** I deem such compliance to be medically inappropriate; or (b) the particular requirement is not in compliance with the laws of my state ***."

¶ 22    On June 9, 2009, the court denied the plaintiffs' motion to vacate the entry of the summary judgment in favor of Bi-County Health, and it granted the plaintiffs leave to file a first amended complaint. In the first amended complaint, the plaintiffs added a count purportedly alleging willful and wanton conduct on the part of Bi-County Health. In that count, the plaintiffs alleged, in pertinent part, that Bi-County Health had "no justification for adhering to a policy that withheld Prevnar from children not enrolled in daycare" and that Bi-County Health had assumed a duty to Logan "to provide him with childhood immunizations in accordance with minimally accepted standards of care for a facility holding itself out as a place to receive such care." The plaintiffs alleged willful and wanton conduct in the conscious disregard of Logan's health and with actual knowledge of the contrary recommendations of the CDC, the AAP, and the VFC program and that Bi-County Health instituted a policy to only vaccinate children enrolled in daycare "[i]n the absence of any justification and fully aware that all children are at risk of contracting pneumococcal disease, including meningitis."

¶ 23    On August 31, 2009, the trial court dismissed with prejudice the counts of the plaintiffs' first amended complaint directed at Bi-County Health. The court based its ruling on the finding that the plaintiffs had not presented anything to show that Bi-County Health owed an individual duty to Logan, so that neither the negligence claim nor the willful and wanton claim could survive. Additionally, the court found that, even if Bi-County Health owed an

individual duty to Logan, there is no willful and wanton exception to the immunity granted to Bi-County Health under section 6-104(a) of the Tort Immunity Act (745 ILCS 10/6-104(a) (West 2008)). The court also found that Bi-County Health was immune under section 2-201 of the Tort Immunity Act (745 ILCS 10/2-201 (West 2008)). The court found no just reason to delay the appeal, and the plaintiffs filed a timely notice of appeal.

¶ 24                                    ANALYSIS

¶ 25                               Standard of Review

¶ 26        We review the trial court's decision granting a summary judgment in favor of Bi-County Health *de novo*. *Wilkerson v. County of Cook*, 379 Ill. App. 3d 838, 843, 884 N.E.2d 808, 812 (2008). A summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2008); *Wilkerson*, 379 Ill. App. 3d at 843, 884 N.E.2d at 812. The trial court may grant a summary judgment after considering the pleadings, depositions, admissions, exhibits, and affidavits on file. *Id*. "Because a summary judgment is a drastic method of terminating litigation, the reviewing court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party." *Trtanj v. City of Granite City*, 379 Ill. App. 3d 795, 799, 884 N.E.2d 741, 745 (2008).

¶ 27        In this appeal, we also consider whether the trial court properly granted Bi-County Health's motion to dismiss the counts of the complaint against it, filed pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)). In that motion, Bi-County Health incorporated by reference its previous summary judgment motion. A section 2-619 motion admits as true all the well-pleaded facts, as well as all the reasonable inferences from those facts. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352, 882 N.E.2d 583, 588 (2008). Our review from a dismissal pursuant to section 2-619 requires us to interpret all the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id*. "It is well settled that our review of a section 2-619 dismissal is *de novo*." *Id*.

¶ 28                               Public Duty Rule

¶ 29        In the case at bar, the plaintiffs argue that the trial court erred in determining that Bi-County Health owed no individual duty to Logan. The plaintiffs contend that, when Bi-County Health agreed to vaccinate Logan, it was enrolled in the VFC program, which created a duty to Logan as one of the children to whom it administered the VFC vaccines. The plaintiffs maintain that we should analyze the issue of whether Bi-County Health owed Logan an individual duty under the traditional duty analysis whereby we consider whether the parties stood in such a relationship to each other that the law would impose on Bi-County Health an obligation of reasonable conduct for Logan's benefit.

¶ 30        Bi-County Health responds that it is a public entity created by statute, that part of its function is to administer vaccines designed to prevent the transmission of communicable diseases, and that its enabling statute obligates it to use its expertise and discretion to create policy in order to carry out that function. See 55 ILCS 5/5-25013(A)(7), (B)(1) (West 2008).

Bi-County Health asserts that the plaintiffs have not disputed the application of this statute, and we agree with that assertion. Therefore, we first consider the enabling statute to determine if there was any duty owed to Logan as an individual.

¶ 31 Bi-County Health's organization, powers, and duties are set forth in section 5-25013 of the Counties Code, which provides, in pertinent part, as follows:

> "(A) *** A board of health may make and adopt such rules for its own guidance and for the government of the health department as may be deemed necessary to protect and improve public health not inconsistent with this Division. It shall:
>
> * * *
>
> 4. Provide, equip and maintain suitable offices, facilities and appliances for the health department;
>
> ***
>
> 6. Within its jurisdiction, and professional and technical competence, enforce and observe all State laws pertaining to the preservation of health, and all county and municipal ordinances except as otherwise provided in this Division;
>
> 7. Within its jurisdiction, and professional and technical competence, investigate the existence of any contagious or infectious disease and adopt measures, not inconsistent with the regulations of the [Public Health Department], to arrest the progress of the same;
>
> * * *
>
> 16. Consult with all other private and public health agencies in the county in the development of local plans for the most efficient delivery of health services.
>
> (B) The board of health of each county or multiple-county health department may:
>
> 1. Initiate and carry out programs and activities of all kinds, not inconsistent with law, that may be deemed necessary or desirable in the promotion and protection of health and in the control of disease including tuberculosis[.]" 55 ILCS 5/5-25013 (West 2008).

¶ 32 The plaintiffs have not alleged any violation of this statute but only that Bi-County Health was negligent in its policy decision to administer the Prevnar vaccine exclusively to children enrolled in daycare and its failure to explain that decision to Logan's parents. Essentially, the plaintiffs have sued Bi-County Health because they disagree with the policy, not because Bi-County Health failed to exercise due care regarding the implementation of the policy when it administered other vaccines to Logan. The plaintiffs do not dispute that Bi-County Health is a governmental entity. Thus, under the public duty rule, Bi-County Health owes no duty to provide Logan or any other individual citizen with its services. See *Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 32, 697 N.E.2d 699, 702 (1998).

> "The public duty rule is a long-standing precept which establishes that a governmental entity and its employees owe no duty of care to individual members of the general public to provide governmental services, such as police and fire protection. [Citation.] This rule of nonliability is grounded in the principle that the duty of the governmental entity to 'preserve the well-being of the community is owed to the public at large rather than to

specific members of the community.' [Citation.]" *Id*.

¶ 33 The public duty rule "shields municipalities and their employees from liability when conducting customary duties toward the public at large." *Sims-Hearn v. Office of the Medical Examiner*, 359 Ill. App. 3d 439, 444, 834 N.E.2d 505, 510 (2005). In *Sims-Hearn*, the court found "no reason not to extend to medical examiners the same protection afforded to police officers pursuant to the public duty rule." *Id*. at 446, 834 N.E.2d at 511 (the medical examiner's office did not owe a duty to the mother of the deceased for alleged negligence in performing the autopsy). The court in *Sims-Hearn* based its application of the public duty rule on the rationale for the rule: that the duty of the county medical examiner's office was to preserve the " ' "well-being of the community," ' " a duty " ' "owed to the public at large rather than to specific members of the community." ' " *Id.* (quoting *Zimmerman*, 183 Ill. 2d at 44, 697 N.E.2d at 699, quoting *Schaffrath v. Village of Buffalo Grove*, 160 Ill. App. 3d 999, 1003, 513 N.E.2d 1026, 1028 (1987)). In the case at bar, section 5-25013 of the Counties Code charges local public health departments such as Bi-County Health with protecting and improving public health, not individual health. Pursuant to its enabling statute, Bi-County Health must make discretionary decisions within its "professional and technical competence" as to how best to "protect and improve public health." 55 ILCS 5/5-25013 (West 2008).

¶ 34 In *Fryman v. JMK/Skewer, Inc.*, 137 Ill. App. 3d 611, 614, 484 N.E.2d 909, 910 (1985), the court held that the plaintiffs, individual restaurant patrons, could not sue the County of Peoria for taking no action to close a restaurant that was serving contaminated food, because it owed no duty to the individual plaintiffs. Under the analysis in *Fryman*, Bi-County Health's statutory duties are governmental duties that must be performed for a governmental purpose and for which Bi-County Health cannot be held liable to these individual plaintiffs for the negligent exercise of that authority.

> "To ascertain whether the improper exercise of authority is actionable, courts have distinguished those functions which are truly governmental in character from those which are not. The resolution of this distinction requires an analysis of the manner and setting in which the authority is exercised. The traditional analysis inquires whether the governmental action is 'discretionary' or 'ministerial.' The latter is actionable, the former is not. The reason for this distinction is that discretionary activities require that the public servant use his judgment in deciding whether a certain course of conduct would best promote the public good." *Id*. at 614-15, 484 N.E.2d at 911.

¶ 35 The actions of which the plaintiffs complain are discretionary. Bi-County Health had no specific guidelines about which vaccines to administer, although certain vaccines other than Prevnar were required for children to enroll in school or daycare. In its discretion and expertise, Bi-County Health made a policy decision about how to allocate its resources in order to best promote and protect public health. In the exercise of that discretion, Bi-County Health took into account the competing interests and its limited resources, including which children were exposed to the highest risk of contracting and spreading meningitis. In order to carry out its statutorily designated duties in the public's best interest, Bi-County Health "must be free from the threat of a lawsuit by those adversely affected by [its] discretionary decision" (*id*. at 615, 484 N.E.2d at 911).

-10-

¶ 36     We agree with Bi-County Health's assertion that allowing the plaintiffs' case to proceed against it would improperly create a "precedent of individuals controlling public resources" based on their individual interests rather than the greatest good for the public. Accordingly, the trial court correctly determined that Bi-County Health owed no duty to the plaintiffs, a necessary element of their claims against Bi-County Health. "It is axiomatic that a duty running from defendant to plaintiff must be shown before an action in tort will lie." *Id*. at 614, 484 N.E.2d at 911. Furthermore, we reject the plaintiffs' argument that we should analyze this issue under the traditional duty analysis that considers the parties' relationship to each other, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37, 856 N.E.2d 1048, 1057 (2006). The crucial consideration in this case is the enabling statute, section 5-25013 of the Counties Code, which establishes Bi-County Health's discretion to make policy decisions about the manner in which it protects and promotes public health. Since we have determined that Bi-County Health did not owe Logan an individual duty, there is no reason to consider the traditional duty factors.

¶ 37                                        Special Duty

¶ 38     The plaintiffs argue that even if Bi-County Health's duty was to the public, Bi-County Health's relationship to Logan gave rise to the special duty exception, citing *Fryman*. The plaintiffs' argument is unavailing. In *Fryman*, the court considered whether the County of Peoria owed "a duty to the individual plaintiffs so that a breach of that duty would give rise to a private action." *Fryman*, 137 Ill. App. 3d at 614, 484 N.E.2d 910-11. In holding that the county had no duty to the individual plaintiffs, the court noted, "It has consistently been held in Illinois that a governmental body, when exercising its authority pursuant to a governmental duty and for a governmental purpose, cannot be liable to a private plaintiff for the negligent exercise of that authority [citation]." *Id*. at 614, 484 N.E.2d at 911. In explaining its ruling, the court in *Fryman* described the special duty exception to the public duty rule:

      "It sometimes happens that, in the course of enforcing the law, public officials will be put in a position where specific individuals come into their care or custody. When the public official negligently exercises care or custody over the individual and the individual is injured as a proximate result of this negligence, the public official is liable." *Id*. at 616, 484 N.E.2d at 912.

¶ 39     The four elements of the special duty exception are as follows: (1) the public entity must be uniquely aware of the particular danger or risk to which the plaintiff is exposed, (2) there must be allegations of specific acts or omissions on the part of the public entity, (3) the specific acts must be either affirmative or willful in nature, and (4) the injury must occur while the plaintiff is under the direct and immediate control of employees or agents of the public entity. *Id*. at 617, 484 N.E.2d at 912. The plaintiffs argue that Bi-County Health knew of the risk associated with contracting meningitis and the benefits of the Prevnar vaccine, that administering the vaccine to Logan would have cost Bi-County Health nothing, and that, in

-11-

all likelihood, Logan would not have contracted meningitis if he had received the Prevnar vaccine as recommended at two, four, and six months of age. The plaintiffs do not, however, argue that Bi-County Health assumed control over Logan's medical treatment, nor could they since Logan's pediatrician was able throughout 2005 to administer the Prevnar vaccine to him. We need not discuss all of these elements as they pertain to the case at bar because there is no evidence in the record to show the existence of the fourth element. Without any argument or evidence to show control, the plaintiffs cannot establish the special duty exception to the public duty rule.

¶ 40                                    Voluntary Undertaking

¶ 41    The plaintiffs argue, "[E]ven if no duty existed, [Bi-County Health] assumed a duty by voluntarily vaccinating Logan." They assert that, regardless of Bi-County Health's governmental status, once it agreed to administer vaccines to Logan, it was required to administer all the vaccines recommended by the VFC program. We disagree.

¶ 42    "Pursuant to the voluntary undertaking theory of liability, one who gratuitously or for consideration renders services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care ***." *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560 (1992). The theory is based upon section 323 of the Restatement (Second) of Torts, which states as follows:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things[ ] is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking."
> Restatement (Second) of Torts § 323 (1965).

However, "[u]nder the voluntary undertaking theory of liability, the duty of care to be imposed upon a defendant is limited to the extent of its undertaking." *Frye*, 153 Ill. 2d at 32, 605 N.E.2d at 560.

¶ 43    While Bi-County Health undertook to provide Logan with childhood vaccinations, the extent of its undertaking was only to do so in accordance with its discretionary policies. In 2005, it was the policy of Bi-County Health to only administer Prevnar to children in daycare or who had certain high-risk illnesses not applicable to Logan. Since Logan was not in daycare when he was immunized at Bi-County Health, he did not receive Prevnar. Thus, Logan received the services provided by Bi-County Health for children within his classification, and Bi-County Health completed Logan's immunizations to the extent of its undertaking.

¶ 44    Further, we do not believe that Bi-County Health's enrollment in the VFC program limited its discretion to develop a policy to only administer Prevnar to children it deemed to be at greater risk of pneumococcal disease. The enrollment form, on its face, provided that Bi-County Health would follow the recommended immunization schedule unless it

"deem[ed] such compliance to be medically inappropriate." Enrolling in the VFC program did not define the extent of Bi-County Health's undertaking when it provided immunizations to Logan. As we have already noted, acting as a public health agency, Bi-County Health had authority to determine how best to allocate its resources in the interests of the public at large. Accordingly, the trial court did not err in finding that Bi-County Health did not voluntarily undertake a duty in regard to Logan.

¶ 45                                    Willful and Wanton Conduct

¶ 46    Finally, we consider the plaintiffs' argument that the trial court erred in dismissing with prejudice the count of its amended complaint directed at Bi-County Health and purportedly alleging willful and wanton conduct. In its dismissal order, the court determined that the plaintiffs' claims based on the theory of willful and wanton conduct should be dismissed because "a duty must exist in order to recover under such a theory." The court held, that, given its previous ruling that Bi-County Health did not owe an individual duty to Logan, the plaintiffs could not recover damages under a willful and wanton conduct theory. That ruling is proper, so we need not consider the court's alternative rulings.

¶ 47    "The requirement that a plaintiff establish the existence of a duty of care applies whether the plaintiff proceeds under a theory of negligence or willful and wanton conduct." *Hess v. Flores*, 408 Ill. App. 3d 631, 636, 948 N.E.2d 1078, 1084 (2011). "To sufficiently plead wilful and wanton conduct, a plaintiff must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the plaintiff's injury." *Newby v. Lake Zurich Community Unit, District 95*, 136 Ill. App. 3d 92, 97, 482 N.E.2d 1061, 1065 (1985). A duty running from the defendant to the plaintiff must be shown before any action in tort will lie. *Fryman*, 137 Ill. App. 3d at 614, 484 N.E.2d at 911.

¶ 48    In the case at bar, the plaintiffs did not allege facts demonstrating a duty of Bi-County Health, the breach of which proximately caused Logan's injury. Accordingly, the trial court properly dismissed the plaintiffs' amended complaint against Bi-County Health because, whether pleading negligence or willful and wanton conduct, the plaintiffs failed to demonstrate that Bi-County Health had any duty to Logan as an individual.

¶ 49                                         Additional Issues

¶ 50    Although the trial court set forth additional grounds in support of its grant of a summary judgment in favor of Bi-County Health, we need not address those grounds. *Filliung v. Adams*, 387 Ill. App. 3d 40, 53, 899 N.E.2d 485, 497 (2008) (a reviewing court may affirm the trial court's grant of a summary judgment on any ground supported by the record). We specifically decline to address the trial court's alternative ruling that Bi-County Health is immune from liability under the Tort Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2008)). Since we have found that no duty exists, the issue of immunity is irrelevant. "The distinction between an immunity and a duty is crucial, because only if a duty is found is the issue of whether an immunity or defense is available to the governmental entity considered: '[u]nlike immunity, which protects a [public body] from liability for breach of an otherwise enforceable duty to the plaintiff, the public duty rule asks whether there was any enforceable

duty to the plaintiff in the first place.' " Zimmerman, 183 Ill. 2d at 46, 697 N.E.2d at 708 (quoting 18 McQuillin on Municipal Corporations § 53.04.25, at 165 (3d rev. ed. 1993)). In the case at bar, the court's finding of no duty is supported by the record.

¶ 51                                    CONCLUSION

¶ 52        For all the reasons stated, we affirm the trial court's orders granting a summary judgment to Bi-County Health and dismissing with prejudice counts I, II, and III of the plaintiffs' first amended complaint, each of which is directed at Bi-County Health. We remand for further proceedings.

¶ 53        Affirmed; cause remanded.